# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

THE TRAVELERS INDEMNITY
COMPANY,

    Plaintiff,

v.                                                     CASE NO. 06-J-0254-S

CITY OF FAIRFIELD BOARD OF
EDUCATION and ALABAMA
PUBLIC SCHOOL AND
COLLEGE AUTHORITY,

    Defendants.

## MEMORANDUM OPINION

Pending before the Court is Defendant City of Fairfield Board of Education's motion for summary judgment (doc. 25) and evidentiary material (doc. 26). Plaintiff has filed a response in opposition to this motion as well as evidence (docs. 27, 28). Defendant filed a reply to Plaintiff's response (doc. 29).

## I.  FACTUAL BACKGROUND

Defendants City of Fairfield Board of Education ("Fairfield") and the Alabama Public School and College Authority ("PSCA") contracted together with Syms Contracting , Inc. ("Syms") to perform four construction projects to three

Fairfield Schools.[1]  (Affidavit of Jimmy Sims at ¶ 2). Syms' bonding company, Gulf Insurance Company ("Gulf"), was obligated to Fairfield for the completion of the work.  Plaintiff Travelers Indemnity Company ("Travelers") is a corporate successor to Gulf.

On April 5, 2001, Syms was awarded a contract for the classroom addition to Glen Oaks Elementary.  (*Id*. at ¶ 3).  Subsequently, Syms was awarded contracts for HVAC/electrical upgrade projects in the summer of 2001.  (*Id*. at ¶ 7).  After Syms had been awarded the contracts, Syms President, Jimmy Sims, in consultation with his retained architect and engineer, determined that the plans and specifications for the three jobs, prepared by Fairfield's architect, did not match the field specifications.  (*Id*.).  In fact, the specifications appeared to Mr. Sims to be related to schools other than the schools for which Sims was to complete work.  After discovering this discrepancy, Mr. Sims reported the problem to Walter Curry, an employee of Fairfield. (*Id*. at ¶ 8).  Mr. Sims then visited the schools with Mr. Curry and representatives of the architect, the project manager and the electrical subcontractor.  (*Id*. at ¶ 9).  After visiting the schools, Mr. Curry instructed everyone involved to proceed with the work.  Mr. Curry told Fairfield's

---

[1]This Memorandum Opinion concerns only the Motion for Summary Judgment filed by Defendant City of Fairfield Board of Education.

architect to prepare new specifications.  Mr. Curry provided oral instructions as to the work to do.  Mr. Curry said that he would sign off on any necessary change orders to get the work done and that he would get the superintendent to sign off on the work also.  (*Id*. at ¶ 10).  Sims proceeded with the work under the instruction from Mr. Curry, Lloyd Hughes of Volkert &Company,[2] and representatives of Fairfield's architect. (*Id*. at ¶ 11).

In early March 2002, early April 2002, and late April 2002, Syms submitted change order requests to Defendant Fairfield.  (*Id*. at ¶ 12).  The amount sought by Syms at the end of April 2002 was $407,547.02.  (*Id*.).  Additionally, other change order amounts totaled "approximately over" $400,000.00.  (*Id*.).  To the knowledge of Mr. Sims, none of the change order amounts requested have been paid.  (*Id*.).

## II.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court

---

[2] Volkert & Company served as "project manager."  (Sims Aff. at ¶ 9).

has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute

regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

### III.   DISCUSSION

Plaintiff has not established the existence of a contractual obligation of Defendant Fairfield for the additional work performed by Syms. Evidence submitted by Defendant reveals that Syms was required to obtain and complete a Contract Change Order if it wanted payment above the amount of the contract sum. Proper completion of the Contract Change Order requires seven separate signatures, including those of the Governor and the Secretary of PSCA. Plaintiff has not submitted evidence that the change orders were binding absent those signatures.[3]

The state statute which created city school boards requires the

---

[3] Plaintiff asserts that the requirement that change orders be put in writing and signed by the superintendent is only found in the "General Conditions of the Contract." (Plaintiff's Opposition at 4). In his affidavit, Jimmy Sims states that he does not recall receiving any document bearing the heading "General Conditions of the Contract." (Sims Aff. at ¶ 4). However, Mr. Sims' signature appears on the "Bond for Payment of Labor, Materials, or Supplies #AE 065713," a document in which the "General Conditions of the Contract" are made a part of the bond obligation. Even if Mr. Sims did not receive the document entitled "General Conditions of the Contract, the conditions are still valid. Under Alabama law, contractual provisions contained in documents incorporated by reference are enforceable. *Ex Parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33, 36 (Ala. 1998). These conditions are also mandated by state law.

superintendant of a city school system to provide written approval to all contracts involving that particular city board of education. Ala. Code § 16-12-7(b). Specifically, the statute states, "The city superintendant shall approve in writing all contracts of whatever kind entered into by the city board of education." *Id.* Here, the initial contracts with Syms were properly approved in writing by Dr. Yvette Richardson, who was the superintendant of the Fairfield Board of Education at that time. Plaintiff has not presented any evidence that Dr. Richardson similarly approved any subsequent modifications to the contracts.

Likewise, the statute that created the PSCA requires "the approval of the secretary of the authority and the Governor" when funds are used for public education construction projects. Ala. Code § 16-16-10(a). Again, the initial contracts were approved accordingly. Plaintiff has not presented any evidence that the Governor approved any modifications to the initial agreement in writing.

The Supreme Court of Alabama has denied recovery where a contractor has performed "change order" work without the proper statutory authorizations. *See, Rainer v. Tillett Bros. Constr. Co.*, 381 So. 2d 36 (Ala. 1980). In *Rainer*, Tillet Brothers received a contract to build a road from the Highway Department. *Id.* at 37. Under Alabama law, the Governor was required to sign contracts entered into by the Highway Department. Ala. Code § 23-1-54. During the construction, Tillet

Brothers encountered more rock than anticipated and asked for an extension. *Rainer,* 381 So.2d at 37. Tillet Brothers later made a claim under the contract for additional payment due to the excess rock. *Id.* The highway director ordered payment to Tillet Brothers and signed a modification to that effect . *Id.* However, the Governor did not sign the modification. *Id.* The successor to the highway director refused to pay the modified amount. *Id.* The Supreme Court of Alabama held that there was no obligation for payment of State funds when statutory prerequisites for payment were not met. *Id.* at 38. The Supreme Court of Alabama found that the purpose of the statute would be defeated if the Governor's signature was only required on initial contracts but not additional expenditures arising out of those contracts. *Id.* at 40.

This situation is strikingly similar to that in *Rainer*. Here, Plaintiff has valid initial contracts, complete with the appropriate written approval. Plaintiff does not, however, have any written documentation that the appropriate people approved of the additional work which was not originally included in the contract. Absent such evidence and following *Rainer*, there is no binding obligation on Defendant to pay for the alleged modification.

## IV. CONCLUSION

Having considered the foregoing, the court finds that Plaintiff has failed to

establish any genuine issue of material fact sufficient to allow this case to proceed to trial. It is therefore **ORDERED** that Defendant's motion for summary judgment is **GRANTED**. The plaintiff's claims shall be **DISMISSED WITH PREJUDICE** by separate Order.

**DONE** this 31st day of July 2006.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE